Lester Maxwell and Delphia E. Maxwell v. Commissioner. Lester Maxwell v. Commissioner.
Maxwell v. Commissioner
Docket Nos. 22244, 22245.
United States Tax Court
1951 Tax Ct. Memo LEXIS 46; 10 T.C.M. (CCH) 1145; T.C.M. (RIA) 51357; November 7, 1951
*46 Throughout the taxable years involved, Marian M. Calloway and her husband, Hasson Calloway, daughter and son-in-law of petitioners, were bona fide members of the partnership business conducted under the name of Lester Maxwell Furniture Co. During the taxable years 1945 to 1947, Delphia E. Maxwell, wife of Lester Maxwell, was not a bona fide member of the partnership business conducted under the name of Lester Maxwell Furniture Co. Geo. E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., and Scott P. Crampton, Esq., for the petitioners. Percy C. Young, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: The above-entitled proceedings were consolidated. In Docket No. 22244 the respondent determined a deficiency in income tax against petitioners for the calendar year 1944 in the amount of $8,419.08. In Docket No. 22245 the respondent determined deficiencies in income tax against petitioner, Lester Maxwell, as follows: Year
Amount
1945
$24,462.59
1946
29,576.56
1947
17,005.55
The issue in Docket No. 22244 is whether, during the taxable year 1944, Hasson Calloway and Marian M. Calloway were bona fide *47 members of the partnership doing business under the name of Lester Maxwell Furniture Co., Knoxville, Tennessee. In Docket No. 22245 the issue is whether, during the taxable years 1945 to 1947, inclusive, Hasson Calloway, Marian M. Calloway and Delphia E. Maxwell or any of them, were bona fide members of such partnership. An alternative issue in each docket number is whether, in the event it is held that no one of such individuals was a bona fide member of such partnership in the respective taxable periods involved, any part of the partnership earnings should be allocated to their respective capital contributions. Some of the facts were stipulated and are so found. Findings of Fact Petitioners, Lester Maxwell and Delphia E. Maxwell, his wife, are residents of Knoxville, Tennessee. The latter is a petitioner in Docket No. 22244 because, for the taxable year 1944, a joint return was filed with the collector of internal revenue for the district of Tennessee. Petitioner Lester Maxwell filed separate returns for the calendar years 1945 to 1947, inclusive, with the collector of internal revenue for the district of Tennessee. During the period 1919 to January 1, 1944, Lester Maxwell *48 conducted a retail furniture business in Knoxville, Tennessee, as a sole proprietorship. In 1929 he engaged his brother-in-law, Fred H. Human, to assist him in the business. In 1939 and at various times thereafter, Human approached Maxwell with respect to securing an interest in the business. In 1940 Marian M. Calloway, daughter of Maxwell, and her husband Hasson Calloway, urged her father to sell them an interest in the business. At that time Maxwell was changing the location of his business from a secondary to a primary location, and he postponed making a decision about taking others into the business. Human, who had become valuable in the business, was contemplating severing his connection with it and entering into business on his own behalf. In the latter part of 1943 Maxwell decided to form a partnership with Human, Marian M. Calloway and Hasson Calloway. Hasson Calloway was then employed as a flight captain with the Air Transport Command, and Maxwell hoped that if he were given an interest in the business he would later become an active participant. Calloway had had some experience in selling furniture. Under date of January 1, 1944 a partnership agreement was executed, reading *49 as follows: "ARTICLES OF PARTNERSHIP "This partnership shall be known as the Lester Maxwell Furniture Company. "The partnership is composed of Lester Maxwell, who owns a 50 per cent interest therein, Fred H. Human, who owns a 25 per cent interest therein, Hasson Calloway, who owns a 12 1/2 per cent interest therein, and Marion [sic] Maxwell Calloway, who owns a 12 1/2 per cent interest therein. "Said partnership shall engage in the retail furniture business in the City of Knoxville, and shall be under the management of Lester Maxwell. "Said partnership shall pay Lester Maxwell a salary for his services and Fred H. Human a salary for his services, so long as said partners continue to devote their time to the business; said salaries to be considered a business expense. After the payment of expenses and salaries set out above, the net profits, if any, shall belong to the partners in the ratio of their interests in said partnership. The salaries of the above partners shall be fixed by agreement of the majority of the partnership, each partner having a vote in the [sic] accordance with the percentage of his interest in the firm. That is, Lester Maxwell shall have 50 votes, *50 Fred H. Human shall have 25 votes, Hasson Calloway 12 1/2 votes, and Marion Maxwell Calloway 12 1/2 votes. "In the event either partner desires to withdraw, the other partners shall have the first chance to buy his interest in the partnership at its book value. In the event of the death of either partner, his or her estate shall be bound to give the surviving partners the opportunity to purchase the interest of said deceased partner at its book value before offering said interest to any outsider. "Executed at Knoxville, Tennessee on this 1st day of January, 1944. "(Sgd.) Lester Maxwell (Sgd.) Fred H. Human (Sgd.) Hasson Calloway (Sgd.) Marian M. Calloway" Upon the organization of the partnership, Maxwell transferred to it certain accounts of the sole proprietorship. He retained cash and certain investment accounts. The book accounts transferred to the partnership, as of the close of business on December 31, 1943, were as follows: Accounts Receivable
$50,747.78
Inventory
17,880.66
Dodge Truck
601.25
Reserve for Depreciation
$ 601.25
Plymouth Auto
829.46
Reserve for Depreciation
829.46
International Truck
635.00
Reserve for Depreciation
471.64
Leasehold Improvement
701.60
Reserve for Depreciation
245.59
Furniture and Fixtures
100.00
Reserve for Depreciation
100.00
Accounts Payable
4,776.58
*51 In connection with the transfer of the business to the partnership, Maxwell included as an asset an item of good will in the amount of $7,388.21, which had not been reflected on the books of the sole prorietorship. The book net worth of the partnership upon its organization was $72,059.44, divided among the partners as follows: Lester Maxwell
$36,028.92
Fred H. Human
18,015.26
Marian M. Calloway
9,007.63
Hasson Calloway
9,007.63
Human paid for his interest in the partnership by giving Maxwell $4,000 in cash and a note for $14,015.26. Hasson Calloway and Marian M. Calloway, in payment of their interests, each gave Maxwell $2,000 in cash and an interest-bearing promissory note for $7,007.63. The $4,000 cash which the Calloways paid in was secured from the Hamilton National Bank of Knoxville on an unsecured note. The note was not endorsed by Maxwell. The Calloways later paid the note to the bank and the two notes for $7,007.63 each, in installments. The last payments on the promissory notes given to Maxwell were made on May 30, 1946. At the time of the formation of the partnership the Calloways owned a house in Miami Springs, Florida, of the approximate *52 value of $10,000 on which there was a $4,000 mortgage; a house in Knoxville valued at above $6,500, which was a wedding present from Marian M. Calloway's father, Lester Maxwell; a lot in Knoxville worth about $1,200, and war bonds and cash of about $3,100. They were indebted to Lester Maxwell in the amount of $5,000. Since 1940 Hasson Calloway has been a flight captain and in 1943 was earning about $400 per month. The formation of the partnership was communicated to Dun & Bradstreet, to the Hamilton National Bank, the insurance companies, and others. Sometime after the formation of this partnership Delphia E. Maxwell felt she should have an interest in it and, with the consent of the other partners, in the latter part of 1944 her husband, Lester Maxwell, sold her one-half of his then interest for the sum of $22,383.61. Delphia E. Maxwell executed and delivered to her husband a non-interest-bearing note, dated January 1, 1945, and payable in 12 months. On the back of the note are endorsements of payments totaling $12,000, as follows: 3- 6-45
$3,000
1-16-47
3,000
6-10-47
1,500
9-17-47
1,500
9-15-48
$1,000
2-23-49
1,000
1- 3-50
1,000 Cancelled checks drawn *53 by Delphia E. Maxwell any payable to Lester Maxwell show payments totaling $10,500, as follows: 1-16-46
$3,000
6-10-47
1,500
8-11-47
1,500
9-17-47
1,500
9-15-48
$1,000
2-24-49
1,000
1- 3-50
1,000 No explanation was offered with respect to the discrepancy in certain amounts and dates between the payments endorsed on the note and the payments made by check. An amendment to the "Articles of Partnership" was executed by the alleged partners, which provides as follows: "AMENDED ARTICLES OF PARTNERSHIP FOR THE LESTER MAXWELL FURNITURE COMPANY "WITNESSETH: "That Lester Maxwell, with the consent of the other members of said partnership, has sold to Delphia Maxwell one-half of his interest in this partnership, and that hereafter said partnership shall be composed of the following persons, who have the following shares in said partnership: Lester Maxwell
25 per cent
Delphia Maxwell
25 per cent
Fred H. Human
25 per cent
Marion M. Calloway
12 1/2 per cent
Hasson Calloway
12 1/2 per cent
"The operation of said partnership shall continue as in the past and as operated under partnership agreement dated January 1, 1944, except that in *54 all matters as to salary, operation, and control, the question shall be settled by a vote of the members of the partnership as the same is now constituted. That is to say, Lester Maxwell, Delphia Maxwell and Fred H. Human shall have twenty-five votes each and Marian M. Calloway and Hasson Calloway shall have twelve and one-half votes each. All of the other terms of said former partnership are hereby made a part of this agreement. "This January 1, 1945. "(Sgd.) Lester Maxwell (Sgd.) Fred H. Human (Sgd.) Delphia H. Maxwell [sic] (Sgd.) Marian M. Calloway (Sgd.) Hasson Calloway" During the taxable periods involved no services for the partnership were performed by Delphia E. Maxwell, Marian M. Calloway or Hasson Calloway. Partnership returns were filed for the fiscal years ended September 30, 1944 to 1947, inclusive. During the taxable periods involved, the partnerships paid salaries to Lester Maxwell and Fred H. Human in the respective amounts as follows: Taxable Period
Ended Sep-
Lester
Fred H.
tember 30
Maxwell
Human
1944
$ 4,877.14
$3,326
1945
6,500.00
4,420
1946
10,400.00
7,072
1947
10,400.00
7,072
After deduction of the aforementioned *55 salaries, the amounts distributed to members of the partnerships during the taxable periods involved were as follows: Distribution for Taxable Period Ended September 30
Partner
1944
1945
1946
1947
Lester Maxwell
$24,949.56
$25,912.77
$21,521.04
$14,148.12
Delphia E. Maxwell
14,171.23
21,521.04
14,148.12
Fred H. Human
12,474.78
20,042.00
21,521.04
14,148.12
Hasson Calloway
6,237.39
10,021.00
10,760.52
7,074.07
Marian M. Calloway
6,237.39
10,021.00
10,760.52
7,074.06
Totals
$49,899.12
$80,168.00
$86,084.16
$56,592.49
Under the original and amended agreements, each of the partners had the right to control their respective shares of the income and during the taxable years involved each of the alleged partners withdrew substantially all of their respective shares. The Calloways devoted such earnings to their own independent use. In determining the deficiencies for the taxable periods involved, the respondent recognized the validity of the partnership to the extent that Lester Maxwell and Fred H. Human were bona fide members, but held that Marian M. Calloway, Hasson Calloway and Delphia E. Maxwell were not bona fide members *56 thereof and taxed their respective distributive shares of the partnership income to Lester Maxwell. In its fiscal year ended in [*] the alleged partnership realized a net long-term gain of $150, and this amount should be taxed to the respective alleged partners in the same proportion as the ordinary net income is finally held to be taxable to the alleged partners. The charitable contributions made by the alleged partnership in the years involved, as disclosed by the respective partnership returns of income, are allowable deductions to the alleged partners in the same proportion as the ordinary net income is finally held to be taxable income in the alleged partners. Throughout all the taxable years involved, Marian M. Calloway and Hasson Calloway were bona fide members of the partnership conducted under the name of Lester Maxwell Furniture Co. During the taxable years 1945 to 1947, inclusive, Delphia E. Maxwell was not a bona fide member of such partnership. Opinion The questions presented are whether, throughout all the taxable years involved, Marian M. Calloway and her husband, Hasson Calloway, daughter and son-in-law of Lester Maxwell, were bona fide members of the *57 partnership conducted under the name of Lester Maxwell Furniture Co., and whether, during the taxable years 1945 to 1947, inclusive, Delphia E. Maxwell was a bona fide member of such partnership. The respondent has recognized the validity of the partnership to the extent that Lester Maxwell and Fred H. Human, his brother-in-law, were bona fide members thereof. The respondent has taxed the respective distributive shares of the partnership income of the unrecognized members to petitioner Lester Maxwell. Applying the test set forth in , we have found as a fact that Marian M. Calloway and her husband, Hasson Calloway, were bona fide members of such partnership throughout all the taxable years. The record establishes that both Hasson Calloway and Marian M. Calloway did contribute to the partnership independent capital originating with themselves. The contention of the respondent that they did not contribute original capital because their cash contribution was obtained on an unsecured bank loan and presumably on the credit of petitioner Lester Maxwell is, we think, without substance. They executed a promissory note to the bank which *58 was not endorsed or collateralized by Maxwell. They were legally liable for the loan and possessed sufficient property out of which the bank could have satisfied the loan in case of default. The further fact that the Calloways gave their individual promissory notes to Maxwell in payment of part of their partnership interests, while a factor to be considered as having a bearing on their intent to become partners, does not warrant the inference drawn by the respondent that the only purpose in making them members of such partnership was to reallocate family income. The promissory notes which the Calloways gave to Maxwell were absolute and unconditional obligations. The notes bore interest and were in fact paid on May 30, 1946. There is no evidence that such notes were to be paid only from partnership profits. At least to the extent that the Calloways made original cash contributions to the formation of the partnership a change in their individual economic status was effected. Furthermore, the evidence establishes that the Calloways had actual control of their respective distributive shares of the partnership income and withdrew substantially all of such income and used it for their *59 independent purposes. Such facts strongly indicate the reality of their true intent to participate as partners in the enterprise. After considering all the appropriate factors for determining the true intention to become bona fide partners, we conclude that Marian M. Calloway and Hasson Calloway intended in good faith to become, and in fact did become, bona fide members of the partnership conducted under the name of Lester Maxwell Furniture Co. The respondent erroneously taxed to petitioner Lester Maxwell in the taxable periods here involved the partnership income distributable to Marian M. Calloway and Hasson Calloway. We next consider whether Delphia E. Maxwell, wife of Lester Maxwell, was a bona fide partner during the taxable years 1945 to 1947, inclusive. Delphia E. Maxwell was not a member of the original partnership formed on January 1, 1944. Sometime thereafter she "felt" she should be a partner, and urged her husband to sell her an interest. On January 1, 1945 a supplemental agreement was executed by all the then partners and by Delphia E. Maxwell, purporting to include her as a partner with a one-fourth interest. The circumstances surrounding her admission and the manner *60 of the acquisition of her interest are rather vague. The record shows that on January 1, 1945 Delphia E. Maxwell executed a promissory note for the amount of $22,383.61, payable to Lester Maxwell in 12 months. The note did not provide for the payment of interest. The amount of the note presumably represents one-half of the amount then credited to her husband's capital account in the partnership. The note bears endorsements showing payments through January 3, 1950 totaling only $12,000. The record also shows certain canceled checks by Delphia E. Maxwell and made payable to her husband, indicating payments totaling $10,500, alleged to be payments on the note. There are certain unexplained discrepancies in dates and amounts shown by the endorsements on the note and the payments evidenced by the canceled checks. During the taxable years involved the payments shown by endorsements on the note total $9,000 and the payments shown by the canceled checks total only $7,500. During the same period Delphia E. Maxwell's distributive share of the partnership income was $49,840.39, made up of the following amounts: $14,171.23 in 1945, $21,521.04 in 1946 and $14,148.12 in 1947. Maxwell suggests that *61 the payments made on the notes were a matter between him and his wife. We are of the opinion that Delphia E. Maxwell's failure to discharge the note with the income from the partnership interest for which it was given has a distinct bearing on the question as to whether there was a bona fide sale or a mere paper reallocation of family income. Obviously the transaction did not effect any change in their economic status. Its net effect was to divide what would have been Lester Maxwell's partnership income. The clear inference, we think, to be drawn from this record is that such transaction was not at arm's length but a mere device to reduce what would otherwise be income taxable to Lester Maxwell. The partnership capital was not increased by such transaction. No contribution of independent capital originating with Delphia E. Maxwell resulted from the note transaction. She concedes that she performed no services for the partnership, nor is there any evidence that she at any time participated in the management or policy making. Delphia E. Maxwell testified that she personally received partnership income. When questioned as to what she did with that income her answer was: "Well, we *62 have a considerable amount in savings bonds. I have a bank account - a checking account [Italics supplied]." We think the answer carries or at least does not deny the implication that the income was used for the benefit of herself and her busband. Furthermore the record is silent as to any business purpose served by Delphia E. Maxwell's admission to the partnership. Giving due consideration to all the relevant factors throwing light upon the true intention of the parties, we hold and have found as a fact that during the taxable years 1945 to 1947, inclusive, Delphia E. Maxwell was not a bona fide partner, for Federal tax purposes, in the partnership business conducted under the name of Lester Maxwell Furniture Co. The respondent did not err in taxing to petitioner Lester Maxwell that part of the partnership income distributable to the one-quarter share held by Delphia E. Maxwell. Petitioners raise an alternative issue, that in the event we hold any of the members of the partnership were not bona fide partners, the distributive income should be allocated between capital and services and taxed accordingly. We have recognized all of the partners to be bona fide members of the partnership *63 except Delphia E. Maxwell. She never contributed capital or services to the partnership. As we have held that the partnership income in the taxable years 1945 to 1947, inclusive, allocable to her alleged interest was taxable to her husband, Lester Maxwell, there exists no basis for an allocation. Cf. , affd. . Decisions will be entered under Rule 50.